IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CORY RICHARDSON, #M40400,          )
                                   )
            Plaintiff,             )
                                   )
    vs.                            )        Case No. 3:23-cv-00805-MAB
                                   )
WEXFORD HEALTH SOURCES, INC.,      )
and JOSH SMITH,                    )
                                   )
            Defendants.            )

## CORRECTED MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Pursuant to Plaintiff Cory Richardson's Notice to the Court of August 28, 2023 (Doc. 21) the Court's Memorandum and Order of August 15, 2023, directing service on Defendants Dr. Josh Smith and Wexford Health Sources, Inc. (Doc. 18) is corrected as follows to reflect that Plaintiff's place of incarceration at all relevant times was Centralia Correctional Center. The Clerk is **DIRECTED** to **VACATE** the Memorandum and Order of August 15, 2023 (Doc. 18).

Plaintiff Cory Richardson, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Sheridan Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his confinement at Centralia Correctional Center ("Centralia"). (Doc. 1). He asserts that Defendants neglected and were deliberately indifferent to his serious medical condition following a surgical procedure. (Doc. 1, pp. 6-9).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28

1

U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.[1] 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

A review of the Complaint reveals the following allegations:  Plaintiff had surgery on May 27, 2022 at Crossroads Hospital in Mt. Vernon, Illinois, performed by Dr. Reagan,[2] to remove a testicular cyst. (Doc. 1, p. 6). On May 28, 2022, after returning to Centralia, Plaintiff was forced to walk to chow and other required movements around the prison. The next day he noticed his stitches were loose and bleeding had increased. The nurses who changed his dressing said this was normal.

On June 1, 2022, Plaintiff had a follow up visit to Dr. Reagan. He did not examine Plaintiff's stitches despite being informed of the increased bleeding; he told Plaintiff this was normal.

On June 6, 2022, Plaintiff was seen by two nurses in the health care unit for the painful, bleeding, open wound in his scrotum. They re-dressed the wound but refused Plaintiff's request to see a doctor because there was no doctor at the prison that day. His request to be taken back to the surgeon was also refused.

On June 7, 2022, Defendant Dr. Josh Smith (the prison doctor, employed by

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by Wexford Health Sources, Inc., to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and Wexford.

[2] Dr. Reagan is not a Defendant herein.

Wexford Health Sources, Inc.) examined Plaintiff and put him in the infirmary for 23 hours to see whether the wound and swelling would improve. On June 9, 2022, Plaintiff was returned to Crossroads Hospital for Dr. Reagan to assess his complications. Dr. Reagan again said the opening wound was normal and gave no further treatment. Plaintiff went back to Centralia and was released from the infirmary back to general population.

On June 10, 2022, Plaintiff was in excruciating pain and barely able to walk. He saw a prison nurse for a dressing change. She contacted a doctor (who again, was not on the premises) for approval to have Plaintiff taken back to an outside hospital. Plaintiff was taken to the ER at Centralia Hospital,[3] where the ER doctor and nurse recommended an ultrasound, removal of a hematoma, and re-closing the wound which had been open for 11 days. However, Dr. Reagan refused to authorize the ultrasound and directed strips to be put on the wound. By the time Plaintiff returned to Centralia, the strips applied by the ER doctor had fallen off, and his now-infected wound remained open. (Doc. 1, p. 7).

On June 13, 2022, Plaintiff saw Defendant Dr. Smith, who agreed that the infected open wound was getting worse, yet did not give Plaintiff any medication or treatment. On June 15, 2022, Plaintiff informed Dr. Smith and the nurses on duty that his condition was worse. The incision was painful and bleeding, but Dr. Smith provided no treatment.

From June 16 through June 20, 2022 (a 4-day period), no doctor was present at the prison to address Plaintiff's complaints of bleeding and pain or to respond to his requests

---

[3] The original Order at Doc. 18 erroneously stated Plaintiff was taken back to Crossroads Hospital ER on this date (See Doc. 21).

to see a doctor. His open wound was infected and oozing pus. Plaintiff saw Dr. Smith again on June 21, 2022, but the doctor did nothing.

Six days later, on June 27, 2022, Plaintiff was sent back to Dr. Reagan, who sutured the wound again. The next day, the sutures ripped open, and Plaintiff was admitted to the prison infirmary.

On June 29, 2022, Dr. Meyers sent Plaintiff to St. Louis University Hospital for emergency evaluation by a surgical urologist. Plaintiff remained in the hospital for 3 days and was given medicine for the infection.

On July 3, 2022, Plaintiff returned to the prison infirmary for observation and treatment. He told Centralia medical staff he was still in excruciating pain. Plaintiff remained in the Centralia infirmary for 4 months thereafter. (Doc. 1, p. 8).

Plaintiff asserts that Wexford Health Sources, Inc. ("Wexford") maintains cost-cutting policies, procedures, and practices that delay medical treatment, including understaffing and failure to have a regularly assigned doctor at Centralia. As a result, Plaintiff endured a painful, bleeding, open wound in his scrotum for 28 days that became infected and led to his hospitalization. Dr. Smith's failure to provide treatment for Plaintiff's painful, infected wound amounted to deliberate indifference to his serious medical condition. (Doc. 1, p. 9). Both Defendants' omissions constituted neglect under state law. *Id*.

Plaintiff seeks compensatory and punitive damages. (Doc. 1, p. 10).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following

claims in this *pro se* action:

> **Count 1:** **Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Smith for denying and delaying treatment for Plaintiff's surgical wound between June 7 and June 29, 2022.**

> **Count 2:** **Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Wexford Health Sources, Inc., for maintaining policies, practices and/or procedures to cut costs by understaffing the Centralia health care unit, which resulted in Plaintiff's inability to see a doctor or obtain timely medical treatment for his surgical wound between June 6 and June 29, 2022.**

> **Count 3:** **State law neglect/negligence claim against Defendant Smith for failing to keep Plaintiff in the infirmary or place him on restricted movement to allow his wound to heal, between May 27 and June 29, 2022.**

> **Count 4:** **State law neglect/negligence claim against Defendant Wexford for failing to instruct Centralia doctors to place Plaintiff on restricted movement given his post-surgery complications, for repeatedly sending Plaintiff back to Dr. Reagan who failed to close Plaintiff's wound, and for understaffing the Centralia health care unit so that no doctor was present when Plaintiff needed treatment, between May 27 and June 29, 2022.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[4]

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Counts 1 and 2

Prison medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Notably, medical negligence or even malpractice does not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

The complications Plaintiff experienced from his surgical incision – sutures that did not hold, bleeding, infection, and pain – amounted to objectively serious medical conditions. Plaintiff informed Dr. Smith of his condition, which Dr. Smith observed for himself. On several occasions, Dr. Smith failed to provide Plaintiff with any treatment; he also delayed referring Plaintiff for treatment outside the prison. Plaintiff's allegations are sufficient for the deliberate indifference claim in Count 1 against Dr. Smith to proceed.

Additionally, Plaintiff has stated a viable claim in Count 2 against Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

**Counts 3 and 4**

Plaintiff's claims in Counts 3 and 4 that Defendants were "neglectful" or negligent derive from the same facts as his federal constitutional claims and will proceed at this stage. 28 U.S.C. § 1367(a). To ultimately pursue this claim, before the completion of the summary judgment phase of the case, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation against the Defendants and a physician's report to support the assertions in the affidavit, pursuant to 735 ILCS § 5/2-622. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019).

**PENDING MOTIONS**

Plaintiff's Motion for Status (Doc. 16) is **GRANTED** insofar as the status of this matter is reflected herein.

The Motion to Request Appointment of Counsel (Doc. 17) is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff states he tried to meet the first requirement by writing to several lawyers without success and he provides copies of 2 rejection letters (Doc. 17, pp. 1, 4-7). This partially satisfies the first *Pruitt* factor. However, given the early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so the recruitment of counsel would be premature. S*ee Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the

plaintiff's need for assistance of counsel...cannot be gauged."). If Plaintiff encounters difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he chooses to renew his request, he should submit at least one more rejection letter from an attorney to demonstrate that he has made reasonable efforts to obtain counsel on his own.

**DISPOSITION**

The Complaint states colorable claims in Counts 1 and 3 against Dr. Josh Smith and in Counts 2 and 4 against Wexford Health Sources, Inc.

The Clerk shall prepare for Wexford Health Sources, Inc., and Dr. Josh Smith: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court

file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  September 1, 2023**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take 90 days or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.