IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORY RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-805-MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Cory Richardson, an inmate in the Illinois Department of Corrections ("IDOC"), filed this lawsuit against Wexford Health Sources, Inc. and Dr. Josh Smith for mishandling his medical care at Centralia Correctional Center after he had a testicular cyst removed (Doc. 1; *see also* Doc. 27). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on Eighth Amendment deliberate indifference claims and state law negligence claims against both Wexford and Dr. Smith (Doc. 27, pp. 5, 6–7).

This matter is currently before the Court on Plaintiff Corey Richardson's motion for leave to file an amended complaint (Doc. 43), motion to appoint counsel (Doc. 42), and "Motion to Dismiss Defendants' Motion for Extension of Time" (Doc. 53).

### MOTION FOR LEAVE TO AMEND

Plaintiff seeks leave to file an amended complaint to elaborate on his existing

claims by adding more facts (Doc. 43). He also wants to identify individuals who were unknown to him when he filed his original complaint (all of whom are non-Defendants) (*Id.*). And finally, he wants to add additional allegations about being prescribed a medication that he was allergic to (*Id.*). Defendants did not file a response or otherwise object to Plaintiff's motion to amend.

The Federal Rules of Civil Procedure instruct that leave to amend should be freely given when justice so requires. FED. R. CIV. P. 15(a)(2). District courts can deny leave to amend "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 855 (7th Cir. 2017) (citation omitted). The Amended Complaint is also subject to review under 28 U.S.C. § 1915A,[1] therefore, the Court will screen the proposed Amended Complaint in accordance with this statute while considering Plaintiff's motion for leave to amend.

Plaintiff makes the following allegations in his proposed amended complaint, many of which were also pleaded in the original complaint. Plaintiff once again alleges that he had a testicular cyst removed on May 27, 2022, by Dr. Reagan at Crossroads Hospital and was discharged back to the infirmary at Centralia, where he was supposed to remain for at least 23 hours (para. 2, 3). The next day, however, Dr. Josh Smith released Plaintiff too early from the infirmary and without any further care or instructions (para.

---

[1] Pursuant to Section 1915A, any portion of the Amended Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

4). The next day, Plaintiff noticed an issue with his stiches and some increased bleeding (para. 5). He complained to a nurse in the health care unit about the pain, swelling, and bleeding, but nothing was done aside from changing the dressing on the wound (para. 6). Two days later, on June 1st, Plaintiff had a follow-up appointment with Dr. Reagan, who also declined to provide any treatment (para. 7, 8).

On June 6th, Plaintiff was seen by two nurses in the health care unit for the painful, bleeding, open wound on his scrotum (para. 9). They re-dressed the wound (*Id.*). He asked to see the prison doctor but there was not one on site (*Id.*). He also asked to be taken back to Dr. Reagan but his request was refused (*Id.*). Plaintiff saw Dr. Smith the following day on June 7th, but Dr. Smith did nothing except place Plaintiff on a short, 23-hour hold in the infirmary (para. 10). Then on June 8th, Plaintiff was taken to see Dr. Reagan again (para. 11, 12). Even though Plaintiff was running a fever and described his pain as a seven out of ten, Dr. Reagan provided no further treatment (*Id.*). When Plaintiff returned to the prison, Dr. Smith held him in the infirmary but discharged him the next day without scheduling any type of follow-up or implementing any type of treatment plan (para. 13).

On June 10th, Plaintiff complained to a nurse in the health care unit about his wound and she obtained approval to send him to the emergency room (para. 14). The emergency room doctors wanted to perform an ultrasound and remove the hematoma on Plaintiff's scrotum, but Dr. Reagan overruled those plans and instead instructed that "strips" should be placed on the wound (para. 16). The strips fell off in less than two hours, leaving the wound open once again (para. 17).

On June 12th, a nurse at the prison documented Plaintiff's large, open, and

draining wound but provided no treatment (para. 18). On June 13th, Plaintiff complained to Dr. Smith that he was in pain and the wound was getting worse (para. 19). Dr. Smith "agreed" but did nothing for the wound or for Plaintiff's pain; all Dr. Smith did was seek approval for a "non-urgent" referral (para. 19). Over the course of the next two weeks, Plaintiff complained repeatedly to nurses and Dr. Smith about the bleeding and pain, but no treatment was provided (para. 20, 21). Finally, on June 27th, Plaintiff was sent back to Dr. Reagan, who added another suture but apparently provided no other treatment (para. 25).

The sutures ripped open in one day, and Plaintiff was admitted to the prison infirmary (para. 26). On June 29th, Dr. Meyers sent Plaintiff to St. Louis University ("SLU") Hospital for an emergency evaluation with a surgical urologist (para. 27). Plaintiff was admitted to the hospital, where he spent three days receiving IV antibiotics for the infection and oxycodone for the pain (para. 27). On July 2nd, Plaintiff was discharged from SLU back to the prison infirmary, where he stayed for over four months (para. 28, 30).

On July 15th or 16th, Plaintiff was prescribed a 10-day course of Bactrim despite his allergy to sulfa-containing medications being well-documented in his medical records (para. 31). The Bactrim caused Plaintiff "horrible stomach pain, breathing difficulties, and digestive problems" (*Id.*).

The allegations in the proposed Amended Complaint are sufficient to state a slightly expanded version of Plaintiff's existing claims. The Court accordingly revises its designation of the claims in this *pro se* action as follows:

**Count 1:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Josh Smith for denying, delaying, or providing ineffective and/or inappropriate treatment to Plaintiff between May 28th and mid-July 2022, including but not limited to discharging him from the infirmary too quickly and not ordering restricted movement, failing to provide antibiotics and/or pain medication, not seeing Plaintiff in a timely manner, and delaying visits with outside providers.

**Count 2:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Wexford Health Sources, Inc., for maintaining policies, practices and/or procedures—including but not limited to understaffing the Centralia health care unit, failing to properly train or instruct its providers on caring for surgical wounds, repeatedly sending Plaintiff to the same outside doctor who failed to provide adequate care—which resulted in Plaintiff being denied treatment or being provided with ineffective, inappropriate, and/or untimely care for his surgical wound between May 28th and mid-July 2022.

**Count 3:** State law neglect/negligence claim against Defendant Smith based on the same operative facts as the deliberate indifference claim in Count 1.

**Count 4:** State law neglect/negligence claim against Defendant Wexford based on the same operative facts as the deliberate indifference claim in Count 2.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court. Any other claim that is mentioned in the proposed amended complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

## MOTION FOR COUNSEL

Plaintiff once again asks the Court to recruit an attorney to represent him (Doc. 42). His first request was denied at the outset of the case because Plaintiff did not make a

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

sufficient showing that he had made a reasonable effort to obtain counsel on his own and because it was too early in the case to accurately evaluate Plaintiff's need for counsel (Doc. 27, pp. 7–8; *see also* Doc. 18).

The Court finds that Plaintiff has now met the threshold burden of showing that he made a reasonable attempt to obtain counsel on his own (*see* Docs. 17, 27, 42). *See Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). However, the Court remains unpersuaded that Plaintiff requires court-recruited counsel to assist him at this time. *See Pruitt*, 503 F.3d at 654-55; *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (articulating considerations for the court in evaluating whether a litigant appears competent to litigate the case himself). At this stage of the litigation, Defendants have asserted as an affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (Docs. 25, 26). The Court is currently waiting to see whether Defendants will pursue this affirmative defense by filing a motion for summary judgment on the issue of exhaustion (*see* Doc. 34). Defendants' deadline to do so is February 8, 2024 (Doc. 52).

Exhaustion generally hinges on disputed issues of fact rather than complex legal questions. Plaintiff should have access to the facts necessary to address any motion for summary judgment on the issue of exhaustion and explain his efforts to file grievances and appeals related to his claims prior to bringing suit, without the assistance of counsel. Indeed, no one knows better than him what steps he took to exhaust his claim. While it may be challenging for Plaintiff to respond to summary judgment on his own, the Court does not believe it is beyond his capabilities. Plaintiff has already filed numerous

submissions, and they have all been well-written and much better than the average prisoner litigant's (*see, e.g.,* 33, 42, 43, 53). They demonstrate that he understands the legal process and the issues relevant to each submission and that he is capable of explaining his version of events and making legal arguments.

For these reasons, the Court believes Plaintiff is competent to handle the case himself at this stage of litigation. Plaintiff may file a new motion for recruitment of counsel after the exhaustion issue is resolved.

### MOTION TO DISMISS DEFENDANTS' MOTION FOR EXTENSION OF TIME

Defendants recently sought an extension of time to file their motion for summary judgment on the issue of exhaustion (Doc. 51). They explained that they were still waiting to receive grievance records from Sheridan Correctional Center, despite having served the subpoena for the records some four months prior (*Id.*). The Court granted the motion before Plaintiff's window to respond had elapsed (Doc. 52). Unbeknownst to the Court, Plaintiff's response—the instant Motion to Dismiss Defendants' Motion for Extension of Time—was actually in the mail (*see* Doc. 53). It was filed a week after the Court granted Defendants' request for an extension of time (*see* Docs. 52, 53). In his motion, Plaintiff argues that all relevant grievance records have already been produced and demonstrate that he fully and properly exhausted his administrative remedies (Doc. 53). He implies that the grievance records from Sheridan are superfluous and Defendants do not actually need them in order to file their motion for summary judgment on the issue of exhaustion (*see id.*). He thus asks the Court to dismiss Defendants' motion for extension of time (*Id.*).

Defendants filed a response but did not directly address Plaintiff's contention that

the grievance records from Sheridan were unnecessary (Doc. 54). They simply stated that they still had not received "the requested grievance and other records necessary to determine if Plaintiff failed to exhaust his administrative remedies" (Doc. 54).

At this point, given that the Court has already ruled on Defendants' motion for extension of time, Plaintiff's motion to strike Defendants' motion is MOOT. Additionally, the Court declines to revoke the extension of time and Defendants' deadline to file a motion for summary judgment on the issue of exhaustion remains February 8, 2024. Defendants are cautioned, however, that the Court is not inclined to grant any further extensions of time without a sufficient explanation as to why they need the grievance records from Sheridan before they can determine if Plaintiff exhausted his administrative remedies.

## Conclusion

Pursuant to Rule 15, and after review of the proposed Amended Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff's motion for leave to amend (Doc. 43) is **GRANTED**. The Clerk of Court is **DIRECTED** to file the Amended Complaint submitted to the Court on October 10, 2023. This matter will proceed on Counts 1 through 4 as designated above.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to this Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in the original Merit Review Order (Doc. 27) and in this Merit Review Order. Defendants are ADVISED that the Court does not accept piecemeal answers.**

Plaintiff's Motion to Appoint Counsel (Doc. 42) is **DENIED**. Plaintiff's Motion to Dismiss Defendants' Motion for Extension of Time (Doc. 53) is **MOOT**. Defendants' motion for summary judgment on the issue of exhaustion remains due on **February 8, 2024** (*see* Doc. 52). If Defendants decide prior to this date that they will not pursue the affirmative defense of exhaustion, they shall promptly file a motion to withdraw the affirmative defense.

**IT IS SO ORDERED.**

**DATED: February 5, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**